**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| International Flora Technologies, Ltd., ) | No. 06-1371-PHX-ROS |
| )  Plaintiff, ) | **ORDER** |
| ) vs. ) | |
| ) Clarins U.S.A., Inc., ) | |
| )  Defendant. ) | |
| ) | |

Pending is Defendant Clarins U.S.A., Inc.'s ("Clarins") Motion for Summary Judgment (Doc. 104) and Plaintiff International Flora Technologies, Ltd.'s ("Floratech") Motion for Partial Summary Judgment (Doc. 102). For the reasons below, Clarins's motion will be granted and Floratech's motion will be denied.

**BACKGROUND**

In the fall of 2005, Floratech learned that Clarins was selling a product called Clarins True Comfort Foundation containing moringa oil[1] and tocophrol.[2] Moringa oil and tocophrol are components of a patent issued to Floratech on March 4, 2003.

---

[1] Moringa oil is a natural oil that comes from the moringa tree, which grows in various places in Africa and Asia.

[2] Tocopherol is a naturally occurring antioxidant used to improve the oxidative stability of vegetable oils.

On May 25, 2006, Floratech filed suit against Clarins bringing claims of patent infringement, inducement of patent infringement, and contributory patent infringement.[3] Clarins answered by asserting, among other things, a prior art defense.

Floratech's claims rest on two patents: (1) U.S. Patent 6,528,075 (the "'075 Patent"), and (2) U.S. Patent 6,667,047 (the "'047 Patent"). In relevant part, the '075 Patent provides:

> 1. A composition comprising
>    a. a long-chain oil of moringa, said long-chain oil has a methylene interrupted unsaturation of less than 10%, in combination with
>    b. at least one tocopherol, wherein said tocopherol is present in an amount from 0.01 to 5% by weight of said long-chain oil, wherein said tocopherol provides an oxidation stability to the long-chain oil of more than 200% relative to the oxidation stability of the oil alone.
> 2. A composition comprising
>    a. a long-chain oil of moringa, said long-chain oil has percent methylene interrupted unsaturation of less than 5%, in combination with
>    b. at least one tocopherol, wherein said tocopherol provides an oxidation stability to the long-chain oil of more than 200% relative to the oxidation stability of the oil alone.
> 3. A composition comprising
>    a. a long-chain oil of moringa, and said long-chain oil has a methylene interrupted unsaturation of less than 1% in combination with
>    b. at least one tocopherol, wherein said tocopherol provides an oxidation stability to the long-chain oil of more than 200% relative to the oxidation stability of the oil alone.

In relevant part, the "'047 Patent" provides:

> 13. A composition for sold phase cosmetic formulations comprising a long-chain oil of moringa, said long-chain oil has a methylene interrupted unsaturation of less than 1%, where the long-chain oil of moringa has a slip value greater than that of castor oil, 7.0 as measured by a modified Cadicamo method, and if included into a cosmetic formulation, provides a greater break strength relative to a standard formulation.

On December 5, 2006, the Parties submitted their Proposed Case Management Plan. In it, Floratech stated:

---

[3] In addition to Clarins True Comfort Foundation, Floratech claims that, through discovery, it learned that Clarins sold two other infringing products in the United States containing moringa oil and tocopherol: creams called "Extra Firming Day Cream-Special for Dry Skin" and "Extra Firming Night Cream-Special for Dry Skin."

> The Infringing Products . . . have at least one compositional feature corresponding to a long-chain oil of moringa with methylene interrupted unsaturation of less than 1%, at least one compositional feature corresponding to at least one tocopherol present in an amount from 0.01 to 5% by weight of the long-chain moringa oil, and at least one compositional feature corresponding to tocopherol providing an improved oxidative stability of more than 200% relative to the oxidative stability of moringa oil alone, which directly infringes both the '075 Patent and the '047 Patent.

Floratech's statement of the case did not specify that it was claiming infringement under Claim 3 of the '075 Patent.

At the outset of discovery, on January 30, 2007, Clarins served an interrogatory requesting that Floratech identify which patent claims it was asserting Clarins had infringed. In response, on March 30, 2007, Floratech identified two claims: "'075 patent — *at least* claim 1" and "'047 patent — *at least* claim 13."[4] (Emphasis in original.)

On October 17, 2007, the Court extended the discovery deadlines by three months. The Amended Rule 16 Scheduling Order extended the final day to supplement discovery to January 13, 2008 and the discovery cut-off date to January 29, 2008.

On October 18, 2007, Floratech noticed the 30(b)(6) deposition of Clarins for January 9, 2008 to testify, among other things, concerning Clarins's prior art defense. At the deposition, Dr. Lionel De Benette testified that Clarins marketed two products in the 1980s called "Double Serum" and "Crème Santal" containing both moringa oil and tocopherol. On January 13, 2008, the final day to supplement discovery, Clarins produced three documents describing the composition of the Double Serum and Crème Santal products.

On February 8, 2008, after the discovery deadline, Floratech supplemented its response to Clarins's January 30, 2007 interrogatory.[5] In its supplemental response, Floratech claimed that Clarins infringed "at least Claims 1, 2 and 3 of the '075 patent, and Claims 3, 4, 5, 13, 14 and 15 of the '047 patent." Floratech stated that the supplemental response was based on the products identified during the January 9, 2008 deposition of Dr.

---

[4] There are 22 claims in the '075 Patent and 25 claims in the '047 Patent.

[5] Although Floratech's supplemental response was dated February 8, 2008, Clarins claims that it did not receive the document until February 20, 2008.

- 3 -

Benetti and the documents produced by Clarins on January 13, 2008. In an email dated March 10, 2008, Clarins notified Floratech that these claims were untimely and that it would object to any assertion of them in the litigation. In response, Floratech offered to allow Clarins to conduct follow-up discovery and to stipulate to extended deadlines.

On March 21, 2008, Floratech moved for partial summary judgment on Clarins's prior art defense and on whether Clarins "infringed" Claim 3(b) of the '075 Patent. On March 24, 2008, Clarins moved for summary judgment on Claim 1 of the '075 Patent and Claim 13 of the '047 Patent. In its motion, Floratech stated that it was withdrawing its claims based upon the '047 Patent.[6] In addition, in its reply, Floratech admitted Claim 1 of the '075 Patent is not viable. (Doc. 128 at 4 ("[I]t became clear to Floratech that Claim 3 was a viable claim, while Claim 1 was not.")).

Because Floratech withdrew its claims based upon the '047 Patent and admitted Claim 1 of the '075 Patent is not viable, the issue is whether Claims 2 and 3 of the '075 are viable. Clarins argues it is entitled to summary judgment because Floratech did not timely supplement its interrogatory to include Claims 2 and 3. In the alternative, Clarins argues Floratech cannot prove the allegedly infringing products meet the limitations of the claims. Because Clarins is entitled to summary judgment on the first ground, the Court need not address Clarins's alternative argument.

**DISCUSSION**

Federal Rule of Civil Procedure 26(e)(1) requires a party who has responded to an interrogatory to supplement its response "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Under Rule 37(c)(1), a party who fails to provide information required by Rule 26(e) "is not allowed to use that information or witness to supply evidence

---

[6] Claims based upon the '047 Patent were formally dismissed pursuant to the stipulation of the parties on May 15, 2006.

- 4 -

on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The sanction under Rule 37(c) is "automatic" absent a determination of substantial justification or harmlessness. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's notes (1993)). The burden of proving substantial justification or harmlessness is on the party facing sanctions. Id. at 1107.

Floratech argues that its disclosure of Claim 3 of the '075 Patent was proper on five bases. The Court disagrees.

First, Floratech asserts that it "disclosed Claim 3 to Clarins and the Court word-for-word" in the Proposed Case Management Plan on December 5, 2006, and that, as such, Claim 3 has "otherwise been made known" to Clarins. See Fed. R. Civ. P. 26(e)(1). Contrary to Floratech's assertion, Claim 3 was not disclosed "word-for-word." The Proposed Case Management Plan provides that the infringing products have "at least one compositional feature corresponding to at least one tocopherol present in an amount from 0.01 to 5% by weight of the long-chain moringa oil." This is a limitation of Claim 1, not Claim 3. The remaining compositional features specified in the Proposed Case Management Plan are also consistent with Claim 1. Even if Floratech had disclosed Claim 3 "word-for-word," this would not have relieved it of its obligation to fully respond to Clarins's interrogatory requesting that Floratech identify which patent claims it was asserting. Nowhere in the Proposed Case Management Plan did Floratech specify that it was asserting a claim under Claim 3. Clarins had no reason to suspect or "otherwise" know that Floratech's interrogatory was inaccurate. See Contech Stormwater Solutions, Inc. v. Baysaver Tech., Inc., 534 F. Supp. 2d 616, 625 (D. Md. 2008) ("A party is thus not required to plan a defense based on all possible documents or information presented during depositions, but rather must be adequately informed by the opposing party, in response to proper discovery requests, which facts, theories, and documents will likely be relied upon at trial."); 7 Moore's Federal Practice § 33.03 (Matthew Bender 3d ed.) (explaining that a purpose of interrogatories is "to narrow the issues at trial").

- 5 -

1    Second, Floratech argues that Clarins should have sought clarification when it stated
2  "*at least* claim 1" in its interrogatory response and that "it appears Clarins attempted to lie
3  in wait, planning to selectively read Floratech's discovery response and then argue a narrow
4  construction of the Court's deadlines." However, if any party could be accused of attempting
5  to "lie in wait," it was Floratech. There are 22 claims in the '075 Patent. Floratech's artful
6  use of language like "*at least* claim 1" does not relieve it of its obligation to identify the
7  specific patent claims it was asserting. Any other approach would thwart the purpose of Rule
8  26(e) in avoiding "surprise" or "trial by ambush." Am. Stock Exchange, LLC v. Mopex, Inc.,
9  215 F.R.D. 87, 93 (S.D.N.Y. 2002).

10   Third, after arguing that it had already disclosed Claim 3, Floratech argues its
11 supplemental interrogatory response dated February 8, 2008—after the discovery cut-off
12 deadline—was timely. Specifically, Floratech argues that it supplemented its interrogatory
13 within 30 days of learning information that allegedly triggered the discovery response.
14 Again, Floratech is incorrect. The deadline on which to "timely" file supplemental discovery
15 responses was January 13, 2008, and in any event, before the discovery cut-off date of
16 January 29, 2008. See Wong v. Regents of Univ. of Cal., 410 F.3d 1052, 1060 (9th Cir.
17 2005) ("Parties must understand that they will pay a price for failure to comply strictly with
18 scheduling and other orders, and that failure to do so may properly support severe sanctions
19 and exclusions of evidence."). Plaintiff should have sought leave to file its supplemental
20 response beyond the discovery deadline. See Fed. R. Civ. 16(b)(4) ("A schedule may be
21 modified only for good cause and with the judge's consent.").

22   Next, Floratech argues that it was substantially justified in supplementing its response
23 after the discovery deadline because the documents produced by Clarins revealed the type
24 of moringa oil used in the Double Serum and Crème Santal products, which "placed the 1%
25 methylene interrupted unsaturation level of Claim 3 into focus." However, documents
26 produced by Clarins only specified the type of moringa oil used in the Double Serum and
27 Crème Santal products sold in the 1980s and are only applicable to Clarins's prior art

1 defense. The documents did not reveal anything about the amount of moringa oil used in the
2 allegedly infringing products. As the Proposed Case Management Plan reveals, Floratech
3 knew early that "[t]he Infringing Products . . . have at least one compositional feature
4 corresponding to a long-chain oil of moringa with methylene interrupted unsaturation of less
5 than 1%." Indeed, Floratech argues that it did raise the Claim 3 at the beginning of this case.
6 Floratech was not substantially justified in raising Claim 3 for the first time after the close
7 of discovery when it could have done so at the outset of this case.

8 Finally, Floratech argues that its late disclosure is harmless because (1) Claim 13 of
9 the '047 Patent was raised at the beginning of this case, and (2) Clarins did not avail itself
10 of Floratech's offer to re-open discovery and to extend the deadlines. Both Claim 13 of the
11 '047 and Claim 3 of the '075 Patent have the limitation of "a long-chain oil of moringa, said
12 long-chain oil has a methylene interrupted unsaturation of less than 1%." As such, Floratech
13 reasons, "Clarins has always known that moringa oil with methylene interrupted unsaturation
14 of less than 1%, as well 10%—the sole difference between Claims 1 and 3 of the '075
15 Patent—has been at issue in this case."

16 Floratech's arguments are unpersuasive. The '047 Patent and the '075 Patent have
17 different limitations and different defenses. As is evidenced by Clarins's motion for
18 summary judgment on Claim 13 of the '047 Patent, Clarins's defense concerning the '047
19 Patent was not based upon the limitation of moringa oil with methylene interrupted
20 unsaturation of less than 1%. Indeed, Floratech has offered no evidence that Clarins focused
21 any of its discovery on the 1% limitation in Claim 13 of the '047 Patent. Since all species
22 of moringa have a level of methylene interrupted unsaturation of less than 10%, Clarins had
23 no reason to explore which particular species was used in its older products.

24
25 Floratech now says the distinction in the level of methylene interrupted unsaturation
26 is "crucial." However, Clarins based its defense, including its discovery efforts, on the
27 claims disclosed. For example, the report of Clarins's technical expert, Dr. Arthur Rich, was
28 specifically limited to these claims: "I understand that [Floratech] has specified only claim

- 7 -

1 of the '075 patent and claim 13 of the '047 patent. . . . I will therefore limit my analysis to those claims . . ." Allowing Floratech's late disclosure would require the Court to re-open discovery, resulting in significant delay and expenditure of resources. See Am. Stock Exchange, LLC, 215 F.R.D. at 94 ("If discovery were to be reopened so that [plaintiff] could take discovery directed to [the newly asserted claim], [plaintiff] would not only suffer a significant delay in the resolution of its case, but also need to have its expert again amend his report to address the newly discovered material.").

Likewise, Clarins was not required to accept Floratech's "remedial offer" to re-open discovery on the new patent claims. First, this offer contradicts the Court's Scheduling Order. See Fed. R. Civ. P. 29 ("a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery"). Second, it would be unfair to force Clarins to engage in another round of discovery, duplicating expense and effort by re-deposing witnesses and commissioning new expert reports, on a claim Floratech should have asserted earlier. Thus, Floratech's failure to disclose new patent claims until after the close of discovery was not harmless.

Accordingly,

**IT IS ORDERED** Defendant Clarins's Motion for Summary Judgment (Doc. 104) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff Floratech's Motion for Partial Summary Judgment (Doc. 102) is **DENIED**.

**IT IS FURTHER ORDERED** the Clerk of the Court shall close this case. The Clerk need not seal this Order.

DATED this 4th day of September, 2008.

_____
Roslyn O. Silver
United States District Judge